⑬

FILED

NOV 1 5 2005

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

1    UNITED STATES BANKRUPTCY COURT

2    EASTERN DISTRICT OF CALIFORNIA

3

4    In re:                          )      Case No. 05-25124-D-13L
                                     )      Docket Control Nos. KSR-4
5    HARVEY ZALL &                   )                          KSR-6
     SELMA JANET ZALL,               )
6                                    )
                          Debtors.   )
7    _____)

8                        __MEMORANDUM DECISION__

9         Creditor T&F Construction Co., Inc. ("T&F"), has objected to

10   certain claims of exemption filed by Harvey Zall and Selma Janet

11   Zall (the "Debtors").  These claims of exemption relate to the

12   Debtors' interest in residential real property at 598 Rivercrest

13   Drive, Sacramento, California (the "Residence").

14        For the reasons set forth below, the court will overrule the

15   objections.

16                          I. INTRODUCTION

17        The Debtors filed their joint Chapter 13 petition on April

18   29, 2005.  In the A-Schedule filed with their petition, the

19   Debtors valued the Residence in the amount of $300,000.  In their

20   D-Schedule, the Debtors identified a number of encumbrances

21   against the Residence, including a 1993 judgment lien in favor of

22   "F&T Construction" (apparently referring to T&F) described as

23   "disputed" and in the amount of $10,000.

24        In their C-Schedule filed April 29, 2005, the Debtors

25   claimed the amount of $125,000 in regard to the Residence as

26   exempt, and identified California Code of Civil Procedure ("CCP")

27   section 704.730(a)(3) as the law providing for the claimed

28   exemption.  In an amended C-schedule filed August 23, 2005, the

⑪⑭

Debtors increased the exemption claim amount for the Residence to $150,000, again looking to CCP section 704.730(a)(3) as the provision for such exemption.

On July 1, 2005, T&F filed an objection, bearing Docket Control No. KSR-4, to the Debtors' $125,000 claim of exemption as to the Residence (the "Initial Objection"). The Initial Objection was timely under Federal Rule of Bankruptcy Procedure 4003(b), the Meeting of Creditors having not yet been concluded as of that date. T&F set the Initial Objection (after amending the notice) for a hearing to be conducted on August 23, 2005. On August 9, 2005, the Debtors filed written opposition to the Initial Objection. At the August 23 hearing on the Initial Objection, both parties and the trustee appeared, and the court continued the hearing to September 27, 2005 and set a briefing schedule pursuant to the request of the parties.

As noted above, the Debtors filed an amended C-Schedule on August 23 that increased the exemption claim as to the Residence, to $150,000. On August 30, 2005, T&F filed a timely objection to that claim as well, bearing Docket Control No. KSR-6 (the "Second Objection"). T&F set the Second Objection for a hearing to be conducted on September 27, 2005. At the September 27 hearing, the court set a briefing schedule for the Second Objection at the request of the parties, and both the Initial Objection and the Second Objection were set to be heard on October 25, 2005.[1]

---

1. Although the filing of the amended C-schedule mooted the Initial Objection, the court permitted briefing on both matters at the request of the parties. Hereinafter, the Initial Objection and the Second Objection will be referred to collectively as "the Objections."

1   Both the Debtors and T&F filed supplemental pleadings
2   pursuant to the briefing schedules, and the record closed on
3   October 14, 2005, with the filing of the Debtors' supplemental
4   reply.  Pursuant to the request of the parties, the court heard
5   oral arguments on October 25, 2005, as to both of the Objections.

6   In these proceedings, no evidence was submitted that the
7   Debtors have recorded a declaration of homestead in regard to the
8   Residence.  As such, and based on the parties' representations,
9   the court finds that the Debtors claimed their exemption for
10  the Residence pursuant to CCP section 704.720, the so-called
11  "automatic" homestead or dwelling exemption in California.[2]
12  Under California law, the exemption for an individual debtor's
13  dwelling owned in fee simple does not require that anything be
14  recorded; this exemption applies to an involuntary or forced sale
15  pursuant to levy by a judgment creditor.  CCP § 704.720(b); In re
16  Yau, 115 B.R. 245, 248 (Bankr. C.D. Cal. 1990).  Pursuant to this
17  "automatic" homestead exemption, the property cannot be sold in a
18  forced sale unless the bid received exceeds the amount of the
19  judgment debtor's homestead exemption, plus the additional amount
20  necessary to satisfy all liens on the property, "including but
21  not limited to any attachment or judicial lien."  CCP § 704.800;
22  In re Pike, 243 B.R. 66, 70 (B.A.P. 9th Cir. 1999).

23  Evidence submitted by T&F in support of the Objections
24  indicates that on August 24, 1993, the Santa Clara County
25  Superior Court entered a judgment in favor of T&F and against the

26

27      2.  The exemption provisions related to a declared homestead, at
28  CCP sections 704.910 through 704.995, are therefore inapplicable in
    this case.

- 3 -

1  Debtors (the "Judgment").  The record also indicates that on
2  October 4, 1993, T&F recorded an abstract of judgment in regard
3  to the Judgment, in the amount of $100,741.81, in the Official
4  Records of the County of Sacramento, in which county the
5  Residence is located.

6      By way of an application filed with the Santa Clara County
7  Superior Court, T&F renewed the Judgment on September 6, 2000, in
8  the amount of $171,294.56.  T&F later filed a proof of claim in
9  this case, asserting a secured claim in the amount of $249,842 as
10  of the date the Debtors filed their Chapter 13 petition.  To
11  date, no objection has been filed by any party to T&F's proof of
12  claim.

13      T&F asserts, and the Debtors have not disputed, that the
14  homestead exemption amount available to the Debtors as of October
15  4, 1993 was $100,000 under California law.

16  <center>II. ANALYSIS</center>

17      This court has jurisdiction over the Objections pursuant to
18  28 U.S.C. sections 1334 and 157(b)(1).  The Objections are core
19  proceedings under 28 U.S.C. section (b)(2)(B).  The Objections
20  were brought pursuant to Federal Rule of Bankruptcy Procedure
21  4003(b).

22      The objecting party, in this case T&F, bears the burden of
23  proving that a claimed exemption is improper.  Fed. R. Bankr. P.
24  4003(c).  In this case, T&F has objected solely to the amount of
25  exemption claimed as to the Residence, and argues that the
26  exemption amount is limited to $100,000.  T&F relies primarily on
27  two authorities in support of its position, but the court finds
28  that other authorities control in this case.

<center>- 4 -</center>

A.    T&F's Arguments

    In its Memorandum of Points and Authorities filed July 1, 2005, T&F "concedes that the [Residence] is a homestead, and that one of the Debtors is over the age of [sixty-five]."  The ground for T&F's objection is thus not that the Residence fails to qualify as property subject to exemption under CCP sections 704.720 and 704.730, or that the Debtors fail to meet the express requirements for the exemption amount provided for those over the age sixty-five under CCP section 704.730(a)(3)(A).

    Instead, T&F's objection goes solely to the amount of exemption that the Debtors can claim for the Residence in this case.  T&F maintains that CCP section 703.750(c) dictates that the amount the Debtors may claim as exempt in this bankruptcy case is limited to $100,000, the amount available to the Debtors as judgment debtors to T&F as of October 3, 1993, when T&F obtained its judicial lien.

    In support of its position, T&F looks primarily to two reported cases.  One is In re Morgan, 157 B.R. 467 (Bankr. C.D. Cal. 1993).  That case was decided before enactment of the Bankruptcy Reform Act of 1994, which included amendments to section 522(f).  In Morgan, the debtors had recorded a declaration of homestead several years before two creditors had obtained judgments against the debtors and recorded abstracts of those judgments in the county in which the debtors' homestead was located.  Before the bankruptcy was initiated, the creditors proceeded in the state court for a forced sale of the residence, and the court made the necessary findings regarding the value of the home and the proper amount of the homestead exemption.  Id.

- 5 -

at 468.  But the bankruptcy case was apparently initiated before the sale of the residence could go forward.

In _Morgan_, the debtors then claimed a homestead exemption in the bankruptcy case, in an amount that exceeded the amount allowed by the state court.  The debtors looked to the fact that applicable law had increased the amount to which they would be entitled, effective approximately two months before the bankruptcy case had been initiated.  _Morgan_, 157 B.R. at 468. The creditors objected to the claimed exemption, and the bankruptcy court sustained the objection.

The bankruptcy court stated two primary reasons for sustaining the objection.  One reason was its decision, based on res judicata, to abide by the recent findings of the state court that fixed the lower exemption amount available to the debtors. _Id_. at 470.  Another reason was the language in CCP section 704.965, applying to recorded homesteads, that provides that where "the judgment creditor obtained a lien on the declared homestead prior to the operative date of [an amendment changing the available homestead amount], the exemption . . . shall be determined as if that amendment had not been enacted."  _Id._ at 469 (quoting CCP § 704.965).

In this matter, T&F looks to the reasoning in _Morgan_ and asks this court to apply the language of CCP section 703.050(c) in the manner the _Morgan_ court applied CCP section 704.965.  This would limit the Debtors' homestead exemption in this bankruptcy case to $100,000.

The second case relied on by T&F is _Bernhanu v. Metzger_, 12 Cal. App. 4th 445 (4th Dist. 1992).  In _Bernhanu_, the creditor

1  obtained a judgment and had recorded it in the county of the
2  judgment debtor's residence, before the time the judgment debtor
3  recorded a declaration of homestead regarding the property.  Id.
4  at 447-48.  The homestead declaration was recorded days after the
5  homestead exemption amount was increased in California.  The
6  trial court had granted the judgment debtor an exemption in the
7  lower amount in effect as of the date the judgment lien had been
8  obtained, and an appeal followed.  The appeals court affirmed the
9  trial court, and in so doing reviewed the language of both CCP
10 section 703.965 and 703.050(c).  Id. at 447-48.

11     This court is not persuaded, however, that the holdings of
12 Morgan and Bernhanu are applicable in this case.  As explained
13 below, revisions to section 522(f) of the Bankruptcy Code that
14 were adopted after Bernhanu was decided, and holdings by the
15 Bankruptcy Appellate Panel of the Ninth Circuit (the "Panel")
16 that were issued after Morgan was decided, dictate a unified
17 approach to the determination of exemptions and the avoidance of
18 judicial liens, under which exemption rights and rights to avoid
19 judicial liens are determined as of the date of the filing of the
20 bankruptcy petition.  This court declines to apply Bernhanu also
21 because it does not involve application of section 522 of the
22 Bankruptcy Code.[3]

23

24     3.  There are also some factual differences between this case
25 and Morgan and Bernhanu that lead this court to limit their
   applicability.  Both Morgan and Bernhanu involve recorded homesteads,
26 rather than the "automatic" homestead exemption applicable here.
   Both cases also involve the interpretation of CCP § 704.965, which,
27 again, goes to cases in which a homestead declaration has been
   recorded.  The Morgan decision rests at least in part on principles
28 of res judicata as to a state court's earlier findings, and there are
   no such findings here.

- 7 -

B.   The Court Must Look Beyond a Single Judgment Creditor's Lien in Applying Section 522

In general, the property of a debtor's bankruptcy estate is determined as of the date the commencement of the case.  See 541 U.S.C. § 541(a) (with specific exceptions, property of the estate is defined as of case commencement).  The same general principal applies to the exemption of property from the estate:  "It is well-established that the nature and extent of exemptions [are] determined as of the date that the bankruptcy petition is filed." In re Chiu, 266 B.R. 743, 751 (B.A.P. 9th Cir. 2001) (citations omitted).  "Because lien avoidance is part and parcel of the exemption scheme, the right to avoid a judicial lien must also be determined as of the petition date."  Id. (citations omitted).

In section 522(b) of the Bankruptcy Code, Congress permitted states to "opt out" of the federal exemption scheme set forth in section 522(d), and California has done so.  But this policy of permitting states to require its residents to make use of state exemptions in bankruptcy is not absolute.

Instead, the courts must apply state-imposed exemption provisions "with whatever other competing or limiting policies the statute contains."  Owen v. Owen, 111 S. Ct. 1833, 1838 (1991).  As stated by another court, "the construction given to state exemption statutes for the purposes of bankruptcy exemption analysis must comport with both the underlying policies of the Bankruptcy Code and state enactment."  In re Frost, 111 B.R. 306, 311 (Bankr. C.D. Cal. 1990) (citations omitted; interpreting section 522(f) and California law to permit avoidance of state tax lien as a judicial lien impairing a debtor's exemptions).

- 8 -

In <u>Owen</u>, the Supreme Court considered provisions in Florida's exemption law that exclude from a homestead exemption property that is encumbered by pre-existing judicial liens. <u>Owen</u>, 111 S. Ct. at 1834-35.  The Court found that this provision was in conflict with the policy set forth in section 522(f) of the Bankruptcy Code, which permits bankruptcy debtors to avoid judicial liens to the extent the lien impairs an exemption to which a debtor would have been entitled under section 522(b). <u>Owen</u>, 111 S. Ct. at 1838.

In 1994, Congress clarified and advanced the holding in <u>Owen</u>, by adopting a mathematical formula under which the courts are to determine when a judicial lien impairs an exemption of the debtor.  That formula expressly requires the court to consider "the <u>amount</u> of the exemption that the debtor could claim <u>if there were no liens on the property</u>" in calculating the extent of impairment.  11 U.S.C. § 522(f)(2)(A)(iii) (emphasis added); <u>see</u> 140 Cong. Rec. H. 10,770 (Oct. 4, 1994), reprinted in 1 Collier Pamphlet Ed. Bankruptcy Code (2005) § 522, at 426-28 (discussing judicial opinions, including <u>Owen</u>, relevant to the revisions made to section 522(f)).

In a case decided after <u>Morgan</u>, the Panel refused to do as T&F has urged the court to do in this case, which would be to look solely to the date judgment creditors recorded abstracts of judgment in order to determine the amount of the debtor's exemption for a homestead.  In <u>In re Mayer</u>, 167 B.R. 186 (B.A.P. 9th Cir. 1994), judgment creditors objected to a debtor's claim of an "automatic" homestead exemption, on the ground that the debtor did not reside at the property in question as of the date

- 9 -

the judgment creditors obtained their judgment liens (the debtor, however, lived there at the time the bankruptcy petition was filed). In the alternative, the creditors argued, as T&F argues here, that the debtor was limited to a smaller homestead exemption amount in effect at the time the judgment liens were created. The bankruptcy court sustained the objections to the debtor's claim of exemption, and also granted the creditors' concurrent motion for relief from stay, to go forward with a forced sale of the homestead under state law.

On appeal, the Panel vacated that part of the bankruptcy court's decision that sustained the objection to exemption. The Panel disagreed with the bankruptcy court's determination that the amount of the homestead exemption must be limited to the amount allowed on the date the judicial liens attached. The Panel stated as follows:

> The [creditors'] judgment lien is not relevant in determining whether [the debtor] is entitled to the homestead exemption listed in his schedules. The filing of the petition constitutes an attempt by the trustee to levy on the property. It is this hypothetical levy the court must focus on[,] in analyzing [the debtor's] entitlement to a homestead exemption. The existence of the [creditors'] judgment lien may impact a trustee's decision to abandon or sell property of the estate, but it does not affect the exemption that [the debtor] is entitled to claim.

Mayer, 167 B.R. at 189 (citations omitted).

This hypothetical levy has been repeatedly sustained in cases applying section 522, including proceedings to avoid liens under section 522(f). In In re Pike, 243 B.R. 66 (B.A.P. 9th Cir. 1999), the Panel applied this principle to determine that a judgment lien created before the time the judgment debtor recorded a homestead declaration nevertheless impaired the

1  debtor's "automatic" homestead exemption as to the home in the
2  debtor's subsequent chapter 7 case.  The Panel affirmed the
3  bankruptcy court's avoidance of the judgment lien, observing as
4  follows:

5      [The judgment creditor] places great significance on
       his status in a voluntary sale context, but such status
6      is irrelevant . . . . This is because the filing of a
       bankruptcy petition is the functional equivalent of a
7      forced or involuntary sale under California law, thus
       allowing a claiming debtor to have the rights, benefits
8      and protections of the automatic homestead provisions.

9      Pike, 243 B.R. at 70 (citations omitted).

10     Cases like Pike and Mayer are predicated on an understanding
11  that lien avoidance under section 522(f) require the courts to
12  "'disregard some element of reality' and consider, in the
13  abstract, whether the debtor would be entitled to an exemption
14  under state law if the lien did not exist.  The object of this
15  test is to determine whether the actual existence of the lien
16  deprives the debtor of potential property rights which would be
17  available absent the lien."  In re Hastings, 185 B.R. 811, 814
18  (B.A.P. 9th Cir. 1995), quoting Owen v. Owen, 111 S. Ct. 1833
19  (1991).

20     The analysis in Pike and Mayer is consistent with the
21  express language of section 522(f) of the Bankruptcy Code, under
22  which the court is to look to the amount of the exemption that
23  the debtor could claim if there were no liens on the property.
24  Pike and Mayer thus look to the time the bankruptcy trustee's
25  hypothetical lien comes into play, which is the date of the
26  bankruptcy filing.  When determining either the debtor's rights
27  to exemptions or rights to avoid judicial liens, the court
28  / / /

1 | therefore is not to look to the time a particular creditor or
2 | creditors may have obtained a pre-petition judicial lien.

3 | Because of the express language of section 522(f) of the
4 | Bankruptcy Code, and because the determination of a debtor's
5 | exemptions in a bankruptcy case is integral to the findings
6 | necessary to the avoidance of a lien, this court is persuaded
7 | that the language and structure of section 522, and the reasoning
8 | that supports the Panel's decisions in Pike, Hastings, and Mayer,
9 | dictate that in this case the Debtors are entitled to claim as
10 | exempt the $150,000 stated in their amended C-Schedule, rather
11 | than the $100,000 amount urged by T&F.  The court is further
12 | persuaded by the fact that in Mayer, the Panel expressly rejected
13 | looking to pre-petition judicial liens for a determination of the
14 | amount of a debtor's California homestead exemption.    Finally,
15 | because the Bernhanu case does not involve the application of
16 | exemption laws under section 522, the court finds that it does
17 | not apply in this case.

18 | III. CONCLUSION

19 | For the reasons set forth above, the court will overrule the
20 | Second Objection.  The court will overrule the First as moot, due
21 | to the Debtors' August 23, 2005 amended exemption claim.   The
22 | August 23, 2005 exemption claimed by the Debtors as to the
23 | Residence, in the amended amount of $150,000, will therefore be
24 | sustained.   The court will issue orders consistent with this
25 | memorandum.

26 |
27 | Dated:   November 15, 2005

_Robert Bardwil_
ROBERT S. BARDWIL
United States Bankruptcy Judge

- 12 -

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

CERTIFICATE OF MAILING

The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that a copy of the document to which this certificate is attached was mailed today to the following entities listed at the address shown on the attached list or shown below.

| | | |
|---|---|---|
| Peter G. Macaluso | Lawrence J. Loheit | Office of the U.S. Trustee |
| 910 Florin Rd #111 | PO Box 1858 | 501 I St. Ste. 7-500 |
| Sacramento, CA 95831-5259 | Sacramento, CA 95812-1858 | Sacramento CA 95814 |

DATED: 11/17/05

By: _Barbara Reynolds_
Deputy Clerk
BARBARA REYNOLDS

EDC 3-070 (New 4/21/00)